**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**RENETTA CHARLES**                                                                    **PLAINTIFF**
**on behalf of C.B.W., a minor child**

**v.**                                          **No. 5:13–CV–190–KGB-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**                              **DEFENDANT**
**Social Security Administration**

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge

Kristine G. Baker.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Baker may

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

adopt the recommended disposition without independently reviewing all of the record evidence.

<u>**Report and Recommendation**</u>

Renetta Charles seeks judicial review of the denial of her application for supplemental security income (SSI) for her granddaughter, C.B.W.[3]  Ms. Charles bases disability on hearing loss in the right ear and acid reflux disease.[4]  Ms. Charles claims C.B.W. has been disabled since her birth in August 2009, but C.B.W. is not eligible for SSI before June 2010, because that is when Ms. Charles applied.[5]  Thus, this case considers whether C.B.W. was disabled when Ms. Charles applied for SSI — when C.B.W. was almost 10 months old — until the ALJ issued the unfavorable decision — when C.B.W. was 34 months old.

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined that C.B.W. had severe impairments — speech/language delay, right-ear hearing loss, and problems with the right arm and leg[6] — but that she lacked an "extreme" limitation in one of six specified functional

---

[3]SSA record at p. 94.

[4]*Id*. at p. 106.

[5]*See* 20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

[6]SSA record at p. 14.

domains, or a "marked" limitation in at least two domains.[7]  Thus, the ALJ concluded

that C.B.W. was not disabled and denied the application.

After the Commissioner's Appeals Council denied a request for review,[8] the

ALJ's decision became a final decision for judicial review.[9]  Ms. Charles filed this case to

challenge the decision.[10]  In reviewing the decision, the court must determine whether

substantial evidence supports the decision and whether the ALJ made a legal error.[11]

This recommendation identifies errors in the ALJ's analysis, shows why the errors

undermine the unfavorable decision, and explains why substantial evidence does not

support the decision.

**Ms. Charles's allegations**.  Ms. Charles generally challenges the ALJ's

determination that C.B.W. was not disabled.  She maintains that C.B.W. had a marked

---

[7]*Id*. at pp. 16-23.

[8]*Id*. at p. 1.

[9]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[10]Docket entry # 1.

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (explaining that the court will uphold the decision if it lacks legal error and is supported by substantial evidence).

limitation in each of the functional domains used for determining whether a child is disabled.  For that reason, Ms. Charles argues, substantial evidence does not support the ALJ's decision.

**Applicable legal principles**.  A child is disabled if she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations…which has lasted or can be expected to last for a continuous…12 months."[12]  If a child has a "marked" limitation in at least two of six functional domains, or an "extreme" limitation in one domain, the ALJ will determine that the child is disabled.[13]  Because Ms. Charles maintains that C.B.W. had a marked limitation in each domain, the court must consider whether a reasonable mind would accept the evidence as adequate to support the ALJ's determination as to each domain.[14]

**Acquiring and using information**.  This domain considers how well a child acquires or learns information, and how well the child uses information she has learned.[15]  For a young infant — like C.B.W. was when Ms. Charles applied — the ALJ considers whether the child shows interest in, and explores, her environment.[16]  At first,

---

[12]42 U.S.C. § 1382c(a)(3)(C)(i).

[13]20 C.F.R. § 416.926a(a).

[14]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[15]20 C.F.R. § 416.926a(g).

[16]20 C.F.R. § 416.926a(g)(2)(i).

a child's actions will be random, but eventually a child should recognize and respond to familiar words, including family names and favorite toys and activities.[17]  For a toddler — like C.B.W. was when SSI was denied — the ALJ considers whether the child is learning about the world around her.[18]  The child should refer to herself and things around her by pointing and eventually by naming.[19]  The ALJ found that C.B.W. had a less-than-marked limitation in this domain.[20]  The court must determine whether a reasonable mind would accept the evidence as adequate to support that finding.[21]

At age 11 months, 28 days, infant development testing indicated borderline functioning.[22]  C.B.W. was noticeably below age level in overall development, but appeared to be progressing well with regard to attention to others and verbal attempts.[23]  C.B.W. demonstrated significant motor problems, however, mainly on her right side, and most particularly with her right hand.

---

[17]*Id.*

[18]20 C.F.R. § 416.926a(g)(2)(ii).

[19]*Id.*

[20]SSA record at p. 16.

[21]*Britton*, 908 F.2d at 330.

[22]SSA record at p. 321.

[23]*Id.* at p. 322.

At age 16 months, C.B.W. began preschool special education.  As part of her program, she was evaluated at ages 16 months, 27 months, and 34 months, using standardized tests for measuring a child's developmental skills.  At ages 16 months and 34 months, C.B.W.'s cognitive scores were greater than two deviations, but less than three deviations.[24]  These scores are probative in this domain because cognition includes the activities of thinking, understanding, learning, remembering, and problem-solving.  A low cognitive score implicates a limited ability to think, understand, learn, remember, and solve problems, and thus necessarily limits a child's ability to acquire and use information.  The scores are probative of Ms. Charles's claim because the Commissioner's regulations generally provide for a marked limitation if a child has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, *and* [the child's] day-to-day functioning in domain-related activities is consistent with that score."[25]  The Commissioner maintains other evidence overcomes C.B.W.'s scores, but on the record as a whole, the evidence does not support the ALJ's finding in this domain.

---

[24]Scores on the Battelle Developmental Inventory: *see id.* at p. 181 (at age 16 months, -2.20 deviation) & p. 443 (at age 34 months, -2.40 deviation).

[25]20 C.F.R. § 416.926a(e)(2)(iii) (italics added).

For example, testing using a different method for evaluating a child's skill development indicates that beginning December 2011 — at age 27 months — C.B.W.'s cognitive functioning fell between one-half and two-thirds of her chronological age.[26] These scores are important because the regulations provide for a marked limitation if a child functions "at a level that is more than one-half but not more than two-thirds of [the child's] chronological age."[27]

Testing also shows that C.B.W. had a delay in receptive language, first manifested at age 16 months.[28] The delay implicates this domain because children with receptive language delays have difficulty understanding and processing what is said.[29] Difficulty understanding and processing what is said limits a child's ability to acquire

---

[26]Cognition scores on the Early Learning Accomplishment Profile: *see* SSA record at p. 400 (at age 27 months: age equivalent 18 months, 36% developmental delay) & p. 443 (at age 34 months: age equivalent 18 months, 47% developmental delay). *But see id*. at p. 182 (at age 16 months - age equivalent 13 months, 19% developmental delay).

[27]20 C.F.R. § 416.926a(e)(2)(ii).

[28]Scores on the Battelle Developmental Inventory: *see* SSA record at p. 181 (at age 16 months, standard deviation of -3.00, 69% delay) & p. 442 (at age 34 months, standard deviation -2.40, age equivalent of 13 months). Rossetti Infant-Toddler Language Scale: *see id*. at p. 385 (45% delay in language comprehension at age 22 months). Pre-school Language Scale-4: *see id*. (38% delay in auditory comprehension; assessment of child's receptive language skills at age 20 months).

[29]Tish Davidson & Brenda Lerner, 5 The Gale Encyclopedia of Med. 4075 (4th ed.).

information.  C.B.W. received speech therapy, but the therapy had not yet overcome the delay.[30]

The ALJ's reliance on the state agency medical expert's opinion — which was based on the initial testing at age 11 months, 28 days, and Ms. Charles's reports — was unreasonable in light of the subsequent testing.  A reasonable mind would not accept the evidence as adequate to support the ALJ's determination that C.B.W. had a less-than-marked limitation, because:  C.B.W. was tested according to industry standards; testing showed a decline in cognitive functioning beginning in December 2011; and the evidence as a whole does not support functioning higher than indicated by test scores. On the record as a whole,[31] the evidence supports a marked limitation beginning in December, 2011.

**Attending and completing tasks**.  This domain considers how well a child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which the child changes activities.[32]  For a young

---

[30]*Compare* SSA record at p. 402 (speech/language impressions at age 28 months: she exhibits normal receptive language skills and a moderate expressive language delay), *with id*. at p. 446 (interpretation of speech therapy test results at age 34 months: she exhibits a mild receptive and moderate expressive language delay).

[31]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (reviewing court must determine whether substantial evidence exists in the record as a whole).

[32]20 C.F.R. § 416.926a(h).

infant, the ALJ considers whether the child shows sensitivity to her environment, initially by responding to various stimuli and later by playing with people and toys for longer periods of time.[33]  For a toddler, the ALJ considers whether the child demonstrates "sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on [her] clothes."[34]  The ALJ found that C.B.W. had a less-than-marked limitation in this domain.[35]  The question before the court is whether a reasonable mind would accept the evidence as adequate to support that finding.[36]

The regulations provide for a marked limitation when a child's impairment interferes seriously with her ability to independently initiate, sustain, or complete activities.[37]  From birth, C.B.W. demonstrated sensitivity to her environment, progressed toward playing with people and toys, and developed attention.  At age 11 months, 28 days, during infant development testing, she demonstrated good interest and attention to all test materials; she was active in her attempts to play with test

---

[33]20 C.F.R. § 416.926a(h)(2)(i).

[34]20 C.F.R. § 416.926a(h)(2)(ii).

[35]SSA record at pp. 17-18.

[36]*Britton*, 908 F.2d at 330.

[37]20 C.F.R. § 416.926a(e)(2).

materials.[38]  The examiner characterized C.B.W. as progressing well with regard to attention to others and verbal attempts.[39]  At age 16 months, she was easily distracted during individualized testing, but she responded well to redirection.[40]  She put away toys when asked and explored adult facial expressions.[41]

During a speech language assessment at age 22 months, C.B.W. was cooperative, although the therapist continually redirected C.B.W. back on task.[42]  At age 27 months, she "exhibited age-appropriate attention skills and attempted all tasks presented to her."[43]  She pointed to pictures in books, named objects, and replaced objects to where they belong.[44]  During occupational therapy evaluation at age 30 months, she required frequent redirection and inconsistently followed one-step directives; she moved quickly from toy to toy and used toys for purposeful play.[45]  She could stacks six blocks.  Her

---

[38]SSA record at p. 319.

[39]*Id*. at p. 322.

[40]*Id*. at p. 181.

[41]*Id*. at p. 182.

[42]*Id*. at p. 384.

[43]*Id*. at p. 399.

[44]Id. at p. 401.

[45]*Id*. at p. 431.

problems completing some tasks flowed from difficulty with her right hand.[46]  A reasonable mind would accept the evidence as adequate to show a less-than-marked limitation in this domain, because it does not show a serious interference with C.B.W.'s ability to independently initiate, sustain, or complete activities.

**Interacting and relating with others**.  This domain considers how well a child initiates and sustains emotional connections with others, develops and uses the language of her community, cooperates with others, complies with rules, and responds to criticism.[47]  For a young infant, the ALJ considers whether the child responds visually and vocally to her caregiver, through mutual gaze and vocal exchanges, and by physically molding her body to the caregiver while being held.[48]  For a toddler, the ALJ considers whether the child can separate from her caregiver, express emotions and respond to the feelings of others, and spontaneously communicate her wishes or needs.[49]  The ALJ found that C.B.W. had a less-than-marked limitation in this domain.[50]

---

[46]*Id.*

[47]20 C.F.R. § 416.926a(i).

[48]20 C.F.R. § 416.926a(i)(2)(i).

[49]20 C.F.R. § 416.926a(i)(2)(ii).

[50]SSA record at pp. 18-19.

The court must determine whether a reasonable mind would accept the evidence as adequate to support that finding.[51]

In addition to a receptive language delay, developmental testing shows C.B.W. had a moderate expressive-language delay.[52]  The test results are probative in this domain because a child with an expressive-language delay has difficulty producing age-appropriate language.  Such difficulty affects a child's ability to interact with others because language facilitates interaction with others and plays an important role in relating to others.  Despite the test results, other evidence shows the delay had little impact on C.B.W.'s interaction and relationships with others.

At age 11 months, 28 days, C.B.W. made good eye contact and smiled frequently at her examiner.[53]  At age one year, 12 days, the examining neurologist described her as playful and charming.[54]  During testing at age 16 months, "rapport was easy to

---

[51]*Britton*, 908 F.2d at 330.

[52]SSA record at p. 320 (at age 11 months, 28 days: equivalent to age 10 months, 23% delay); p. 399 (at age 16 months: equivalent to age 10 months, 38% delay); p. 385 (at age 22 months: moderate delay, -1.64 standard deviation, 38% delay); p. 401 (at age 27 months, 39% delay, standard deviation of -1.56); p. 402 (at age 27 months, moderate delay, -1.56 standard deviation); p. 439 (at age 34 months: age equivalent to 24 months, standard deviation -1.67) & p. 445 (at age 34 months: age equivalent to 19 months, standard deviation -1.67, 44% delay).

[53]*Id*. at p. 319.

[54]*Id*. at p. 339.

establish."[55]  "Overall language was intelligible."[56]  During testing at age 27 months,

"rapport was easy to establish."[57]  C.B.W. separated from her caregiver 25 hours each

week to attend preschool special education.  A reasonable mind would accept the

evidence as adequate to show C.B.W. had a less-than-marked limitation in interacting

and relating with others, because the evidence does not show a serious interference with

her ability to independently initiate, sustain, or complete activities.

**Moving about and manipulating objects**.  This domain considers how the child

moves her body from one place to another (the child's gross motor skill) and how the

child moves and manipulates things (the child's fine motor skill).[58]  For a young infant,

the ALJ considers whether the child can hold up her head, sit, crawl, sometimes hold

onto a stable object, and stand actively for brief periods.[59]  For a toddler, the ALJ

considers whether the child uses her body to actively explore a wide area of her

physical environment with steadily increasing control and independence from others.[60]

---

[55]*Id*. at p. 181.

[56]*Id*.

[57]*Id*. at p. 399.

[58]20 C.F.R. § 416.926a(j).

[59]20 C.F.R. § 416.926a(j)(2)(i).

[60]20 C.F.R. § 416.926a(j)(2)(ii).

The ALJ found that C.B.W. had a less-than-marked limitation in this domain.[61]  The

question is whether a reasonable mind would accept the evidence as adequate to

support that finding.[62]

Infant development testing revealed delays in fine and gross motor skills at age

11 months, 28 days.[63]  C.B.W. demonstrated significant motor problems with her right

side, particularly with her right hand.[64]  An examining neurologist described C.B.W.'s

right arm as significantly contracted.  The neurologist suspected a stroke or lack of

oxygen during birth, and recommended physical and occupational therapy.[65]  At age 16

months, C.B.W. demonstrated a mild delay in fine motor skills, but she did not qualify

for occupational therapy.[66]  Because she demonstrated more significant problems with

gross motor skills, her evaluators recommended a physical therapy evaluation to

---

[61]SSA record at pp. 19-20.

[62]*Britton*, 908 F.2d at 330.

[63]SSA record at p. 320 (fine motor skills equivalent to 8 months, gross motor skills equivalent to 9 months).

[64]*Id*. at p. 322.

[65]*Id*. at p. 339.  "Physical therapy is used to maintain and restore range of motion and strength in affected limbs….Occupational therapy improves such self-care skills as feeding, bathing, and dressing, and helps develop effective compensatory strategies and devices for activities of daily living."  Richard Robinson, Teresa G. Odle & Rebecca J. Frey, 5 The Gale Encyclopedia of Med. 4179 (4th ed.).

[66]SSA record at p. 184.

further access her gross motor skills.[67]  By that time, C.B.W. was having problems with the right leg.  At age 19 months, physical therapy evaluators determined C.B.W. had a moderate delay in acquiring gross motor skills and recommended 45 minutes of physical therapy twice weekly.[68]  At age 23 months, C.B.W. started walking.

At age 27 months, C.B.W. was re-evaluated for occupational therapy.  C.B.W.'s scores on standardized tests reflect a decline in motor skills.  Her scores on standardized tests were greater than two deviations, but less than three deviations, or placed her functioning between one-half and two-thirds of her chronological age.[69]  Based on this testing, C.B.W. began occupational therapy for 45 minutes twice weekly, in addition to the physical therapy she already received.[70]  Despite the extra therapy, C.B.W.'s scores on standardized tests at age 34 months were still greater than two deviations, but less

---

[67]*Id*. at p. 185.

[68]*Id*. at p. 356.

[69]Early Learning Accomplishment Profile: *see id.* at p. 400 (gross motor skills: age equivalent 21 months, 25% developmental delay; fine motor skills: age equivalent 17 months, 39% delay).  Peabody Developmental Motor Scales: *see id*. at p. 403 (total motor score: -2.33 standard deviation; 42% delay).  Mullen Scales of Early Learning: *see id*. at p. 403 (gross motor skills: -2.05 standard deviation; 29% delay).

[70]*Id*. at p. 405.

than three deviations, or placed her functioning between one-half and two-thirds of her chronological age.[71]

C.B.W.'s delays in gross motor skills flows from decreased strength in the right leg and a hyper-extended right knee.[72]  At the time of the hearing, she wore an orthotic on the right leg.[73]  She continued to receive 45 minutes of physical therapy and 45 minutes of occupational therapy, twice weekly.[74]

C.B.W. improved with physical and occupational therapy,[75] but the therapy had not yet overcome the delay.  A reasonable mind would not accept the evidence as adequate to show C.B.W. had a less-than-marked limitation in moving about and

---

[71]Battelle Developmental Inventory: *see id*. at pp. 442-43 (gross motor skills, age equivalent 16 months, -2.00 standard deviation; fine motor skills, age equivalent 11 months, -3.00 standard deviation; total motor, age equivalent 17 months, -2.00 standard deviation).  Scales of Independent Behavior: *see id*. at p. 443 (motor score, age equivalent 14 months, -3.80 standard deviation).  Early Learning Accomplishment Profile: *see id.* at p. 443 (gross motor skills: age equivalent 19 months, 44% developmental delay; fine motor skills: age equivalent 18 months, 47% delay).  Peabody Developmental Motor Scales: *see id*. at pp. 447 & 449 (fine motor skills: -2.33 standard deviation; gross motor skills, -2.05 standard deviation).  Mullen Scales of Early Learning: *see id*. at p. 447 (fine motor skills: age equivalent 26 months, -2.40 standard deviation; 24% delay).  Hawaii Early Learning Profile:  *see id*. at p. 449 (fine motor skills: -2.05 standard deviation, 34 % delay).

[72]*Id*. at pp. 449-50.

[73]*Id*. at p. 450.

[74]*Id*. at p. 451.

[75]*Id*. at p. 447 (two month gain in fine motor skills from Feb 2012 to July 2012) & p. 450 (increase in motor skills from 16 months in Feb 2012 to 22 months in July 2012).

manipulating objects, because testing according to industry standards shows a decline in both fine and gross motor skills beginning in December 2011, and because physical and occupational therapy had not overcome the decline by the date of the ALJ's decision.  The ALJ's reliance on early reports from Ms. Charles and C.B.W.'s preschool teacher was unreasonable in light of the subsequent testing.  On the record as a whole,[76] the evidence supports a marked limitation beginning in December 2011.

**Caring for yourself**.  This domain considers how well a child maintains a healthy emotional and physical state, including how well the child gets her physical and emotional wants and needs met in appropriate ways; how the child copes with stress and changes in her environment; and whether she takes care of her own health, possessions, and living area.[77]  For a young infant, the ALJ considers the child's capacity for self-consolation and attempts to do things for herself, like insisting on putting food in her mouth and refusing her caregiver's help.[78]  For a toddler, the ALJ considers efforts to do more things for herself, cooperate with caregivers, and demonstrate what she can do on her own.[79]  The ALJ found that C.B.W. had a less-than-marked limitation

---

[76]*Slusser*, 557 F.3d at 925.

[77]20 C.F.R. § 416.926a(k).

[78]20 C.F.R. § 416.926a(k)(2)(i).

[79]20 C.F.R. § 416.926a(k)(2)(ii).

in this domain.[80]  The question is whether a reasonable mind would accept the evidence

as adequate to support that finding.[81]

As a young infant, C.B.W. demonstrated difficulty with feeding herself due to

her right hand.  She could keep her right hand open, but she relied on it very little; most

times, she held her hand in a half-clinched position.[82]  This difficulty is problematic

because C.B.W. is right-hand dominant.[83]

At age 16 months, C.B.W. could remove her socks, but she needed help to

remove her shoes, manipulate buttons, open milk, open doors, and use a spoon to feed

herself.[84]  By age 30 months, she could remove her socks and shoes, and feed herself

with a spoon.[85]  She still needed help with buttons, opening milk, opening doors, and

using the toilet.  At age 34 months, she used her voice and gestures to make her needs

known.[86]  At all times, she cooperated with her caregivers.  A reasonable mind would

accept the evidence as adequate to show C.B.W. had a less-than-marked limitation in

---

[80]SSA record at pp. 21-22.

[81]*Britton*, 908 F.2d at 330.

[82]SSA record at p. 321.

[83]*Id*. at 338 (neurologist described the child as right-handed).

[84]*Id*. at p. 184.

[85]*Id*. at p. 431.

[86]*Id*. at p. 446.

this domain because it does not show a serious interference with her ability to independently initiate, sustain, or complete activities.

**Health and physical well-being**.  This domain considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's functioning, not considered in moving about and manipulating objects.[87]  The regulations provide for a marked limitation if a child is frequently ill because of her impairment or the child has frequent exacerbations of her impairment(s) that result in significant, documented symptoms or signs.[88]

In addition to problems with her right hand and right leg, C.B.W. has a mild hearing loss in the right ear.[89]  She had a hearing aid, but she did not always wear it. Ms. Charles was afraid that the child would lose it.  As an infant, C.B.W. had some problems tolerating formula,[90] but she had no problems at the time of the hearing.  She had experienced common childhood ailments,[91] but other than that, she was healthy.  A

---

[87]20 C.F.R. § 416.926a(l).

[88]20 C.F.R. § 416.926a(e)(iv).

[89]SSA record at p. 327 (mild hearing loss in right ear).

[90]*See id*. at p. 341 (Nov 4, 2010, child throwing up what she eats or drinks).

[91]*See id*. at p. 344 (Aug. 25, 2010, viral syndrome, no treatment prescribed, parent reassured) & p. 346 (Oct. 12, 2010, upper respiratory infection).

reasonable mind would accept the evidence as adequate to show C.B.W. had a less-than-marked limitation in health and well-being.

**Conclusion and recommendation**.  The ALJ erred in regard to the domains of acquiring and using information, and moving about and manipulating objects.  The evidence on the record as a whole supports marked limitations in those domains beginning December 2011 through the date of the ALJ's decision.  Because a child with marked limitations in two domains is disabled under the regulations, substantial evidence does not support the decision.  For this reason, the undersigned magistrate judge recommends GRANTING in part, and DENYING in part, the request for relief (docket entry #1).  Specifically, the undersigned recommends: (1) REVERSING the ALJ's decision denying the application for SSI beginning in December 2011, and (2) REMANDING this case for the award of SSI beginning December 2011.

DATED this 4th day of June, 2014.

_____
UNITED STATES MAGISTRATE JUDGE